UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DANIEL RILEY, )<br>)<br>    Petitioner )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>    Respondent ) | 1:12-cv-00047-GZS<br>1:07-cr-00189-GZS |

**RECOMMENDED DECISION
SECTION 2255 MOTION**

Jason Gerhard, Cirino Gonzalez, and Daniel Riley were convicted of various offenses including conspiring to commit offenses against the United States and federal officers and being accessories after the fact to tax crimes of other convicted criminals. These three defendants were active supporters of Edward and Elaine Brown during a well-publicized, nine-month standoff with federal authorities in New Hampshire. According to the First Circuit Court of Appeals, these three defendants "helped acquire firearms and explosives and turn the Browns' property into a potential death trap." United States v. Gerhard, 615 F.3d 7, 12 (1st Cir. 2010). Following the First Circuit's affirmance of his convictions on direct appeal, Daniel Riley has now filed a two-hundred-plus-page motion pursuant to 28 U.S.C. § 2255. Additionally, he has filed over one hundred pages of exhibits. He raises eight separate grounds that he claims entitle him to relief. I discuss each of his claims below. After careful review of the relevant pleadings, I now recommend that the court deny the motion and summarily dismiss this proceeding without further evidentiary hearing.

1

**DISCUSSION**

*Grounds One and Two and the implications of 28 U.S.C. § 292(b)*

In his first § 2255 claim, Riley maintains that United States District Court Judge George Z. Singal of the District of Maine was improperly designated under the provisions of § 292(b) to hold court in the District of New Hampshire.  Alternatively, in his second ground he argues that if Judge Singal's designation complied with the statutory provision, then the statute as applied in his case is unconstitutional.  Although this claim was never raised on direct appeal, Riley argues that the doctrine of procedural default is inapplicable because the judge lacked proper jurisdiction to preside over his criminal trial and enter judgment in his District of New Hampshire case and lack of jurisdiction can be raised at any stage of the proceedings because it is a claim of constitutional magnitude, citing Robson v. United States, 526 F.2d 1145, 1147 (1st Cir. 1975).  "This is an argument that fails on both the facts and the law."  See Gerhard v. United States, 1:11-cv-498-GZS, ECF No. 12 (rejecting similar argument raised by co-defendant in his § 2255 petition).

Judge Singal was duly designated in accordance with 28 U.S.C. § 292(b).  The Government has attached to its response a copy of the December 21, 2006, designation order pursuant to which the judge was assigned to hold court in the District of New Hampshire "during the period beginning January 1, 2007, and ending December 31, 2007, and for such additional time in advance thereof to prepare for the trial of cases, or thereafter as may be required to complete unfinished business." (Gov't Ex. A.)  Given this temporary designation, which covers the period of time in which the underlying complex criminal case was assigned to the judge, there is no basis for finding that the designation lacked the necessary statutory authority.

Secondarily, as the Government argues in its response, even if the chief judge of this circuit violated 28 U.S.C. § 292(b) (a highly dubious proposition), because the "temporary" appointment of Judge Singal was rather automatically renewed from year to year, Riley's argument is barred by the de facto officer doctrine. As the Supreme Court most recently stated in Nguyen v. United States, 539 U.S. 69 (2003), "[t]he de facto officer doctrine . . . 'confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient.'" Id. at 77 (quoting Ryder v. United States, 515 U.S. 177, 180 (1995)). Thus, even if Riley could prove that there were some "technical defect" in the judge's statutory authority to preside over some aspect of his District of New Hampshire criminal proceeding, the doctrine would support the validity of the proceedings unless Riley could establish that the judge "could never have been" properly designated to preside over his trial and sentencing in the District of New Hampshire. Nguyen, 539 U.S. at 79 (discussing the application of the de facto officer doctrine in McDowell v. United States, 159 U.S. 596 (1895), and Ball v. United States, 140 U.S. 118 (1891)).

Riley further claims that if § 292(b)'s statutory language authorizes the type of "temporary" appointment that occurred in Judge Singal's case, then the statute has been unconstitutionally applied in violation of the separation of powers doctrine, the appointment clause, and the Sixth Amendment. But there is no constitutional violation here because Judge Singal's appointment as an Article III judge by the President of the United States with the advice and consent of United States Senate has not been challenged. The circuit judge's designation was not what gave Judge Singal the authority to preside at the trial; his authority arose from his Article III appointment. Whatever imagined statutory defect existed in the circuit judge's

designation, it simply was not of constitutional dimension. Ryder, 515 U.S. at 182 (stating that the de facto officer doctrine does not apply to a claim that the appointment of a judicial officer "trespassed upon the executive power of appointment" under the Constitution).

To the extent that Riley's Petition might additionally be read to assert a claim for ineffective assistance of counsel based on a failure to present the same jurisdictional arguments on direct appeal, I find such a claim to be devoid of merit. Quite simply, counsel's failure to raise meritless arguments played no role in the outcome of the underlying criminal proceeding.

***Ground Three and the claimed ineffective assistance of first appointed counsel due to conflict of interest***

On September 13, 2007, Riley made his initial appearance and asked that counsel be appointed. His first attorney, Mark Howard, was appointed that day and moved to withdraw less than three weeks later, on October 2, 2007, on instructions from Riley. Riley relies upon Cuyler v. Sullivan, 446 U.S. 335 (1980), for the proposition that the Sixth Amendment right to effective assistance of counsel encompasses the right to representation by an attorney who does not owe conflicting duties to others. The Cuyler case involved the potential conflict that may arise when an attorney owes conflicting duties to defendants because he has agreed to undertake multiple representation of a number of related defendants, a circumstance irrelevant to the present analysis. However, the more important teaching found in Cuyler that is relevant to this case is that the mere "possibility of conflict is insufficient to impugn a criminal conviction." Id. at 350. In Riley's case he is claiming a conflict of interest because Howard was employed as an assistant United States attorney in the New Hampshire United States Attorney's Office for approximately eight and one-half years prior to representation of Riley and he maintained cordial personal relationships with two of the prosecuting attorneys. Riley has not presented any evidence to establish that the perceived "conflict" actually adversely affected counsel's performance. See

Mickens v. Taylor, 535 U.S. 162 (2002).  The entire house of cards is built upon Riley's supposition that Howard's course of conduct was motivated solely by a desire to please his former colleagues and by his loyalty to the United States of America, his former employer.

According to Riley, Howard's friendship and past employment[1] led him to mislead Riley into believing that early cooperation with the prosecutors could secure his release pending trial and would ultimately inure to his benefit.  Apparently Riley entered into a proffer session with the prosecutors on September 13, 2007, and on two other days shortly thereafter.  (See Pro Se Motion to Suppress, ECF No. 102, filed in United States v. Gerhard, 1:07-cv-189-GZS.)

> The written and signed proffer agreement provided, in pertinent part:
>
> (1) Except as provided in this letter, no statement made by Mr. Riley during the proffer session will be used by the government in any direct case against him in any trial or other proceeding unless such statement is false, misleading or made with intent to obstruct justice, in which case the statement may be used directly against Mr. Riley in any proceeding for any purpose;
>
> (2) If Mr. Riley testifies contrary to anything he says in the proffer in any trial or other proceeding, the government may use any statement made by Mr. Riley during the proffer or information obtained directly or indirectly from the proffer for the purpose of impeachment, cross-examination or rebuttal.
>
> (3) The government may make derivative use of and may pursue investigative leads suggested by any statements made by Mr. Riley or other information provided by him, for any purpose. This provision eliminates the necessity for a Kastigar hearing at which the government would otherwise be required to prove that the evidence it would introduce in any trial or other proceeding is not tainted by any statements made by or other information provided by Mr. Riley during any proffer.
>
> (4) Pursuant to U.S.S.G. §IB1.8, the government agrees that any self-incriminating information provided by Mr. Riley during the examination will not be used in determining his applicable sentencing guideline range.

(Order on Motion to Suppress, United States v. Gerhard, 1:07-cr-00189-GZS, ECF No. 246.) The District Court concluded that Riley made the decision to sign the proffer agreement without

---

[1] Riley recounts Howard's professional background on pages 13-14 of the motion to vacate (ECF No. 1).

5

any coercion. The Court found that Riley understood there was a possibility he could be released on bail pretrial if he cooperated, but no guarantee, and that there was absolutely no credible evidence to support the claim that attorney Howard lied to Riley about the terms or meaning of the proffer agreement or about the likelihood of being released on bail. (Id. at 4.) Attorney Howard testified at the hearing and was subject to cross-examination. There is no need to convene any further evidentiary hearing on whether the "conflict" that Riley perceives caused Howard to somehow perform below the standard to be expected of a defense attorney under Strickland v. Washington, 466 U.S. 668, 687 (1984), which is ultimately the standard that governs any claim of ineffective assistance of counsel. That standard involves two prongs: deficient representation and prejudice. This Court found at the suppression hearing that Riley and Howard discussed "each and every operative provision of the proffer letter including the reservation of the use of derivative evidence." (Order on Motion to Suppress at 3, ECF No. 246.) That finding negates any claim that Howard's performance was deficient surrounding the circumstances of the proffer.

      While Riley has spent many pages theorizing that Howard's loyalty to his former colleagues and employers created a personal conflict for him, he has produced no evidence to that effect. Instead he argues that the conflict can be inferred from the fact that Howard advised him of the rather unremarkable proposition that early cooperation was his best bet for securing pretrial release and consideration at sentencing should he ultimately be convicted. Riley's theory is that Howard gave this advice because of his divided loyalty and desire to please his friends. While I am sure Riley is firmly convinced of the truth of his position, there is no evidence to support the notion that Howard provided this advice because of divided loyalty and the advice, standing alone, was not professionally suspect. The decisions whether or not to attend the

proffer sessions were knowingly and intelligently made by Riley, according to this Court's findings on the motion to suppress. There is no evidentiary basis for a hearing or further inquiry into the facts of Howard's personal relationships with colleagues or loyalty to his former employer.

*Ground Four and the claim of denial of self-representation*

Through his counsel on appeal, Riley argued that his Sixth Amendment right to proceed without counsel, recognized in Faretta v. California, 422 U.S. 806 (1975), was violated at trial. Riley argues in his Section 2255 motion that the Court of Appeals did not adequately consider his claim of denial of self-representation in the context of earlier portions of the proceedings, specifically during the September 2007 three-week period when Howard was appointed to represent him. The docket entries reflect that when Riley first appeared in court in New Hampshire on September 13, 2007, he signed a motion asking that counsel be assigned[2]. (ECF No. 8.) The record further reflects that Riley did not assert his right to self-representation clearly and unambiguously to the court until October 22, 2007, when he filed a pro se motion to be allowed to be his own counsel. (ECF No. 30.) The appeals court decision, United States v. Gerhard, 615 F.3d at 26-27, considered and rejected the claim of a denial of this right to self-representation from that point forward. The appeals court also noted that the record flatly contradicted Riley's claim that he did not ask for counsel to be appointed at his initial appearance. Id. at 27 n.10.

It is well settled law that issues disposed of on a prior appeal will not be reviewed again by way of motion brought under 28 U.S.C. § 2255. Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967) ("[I]ssues disposed of in a prior appeal will not be reviewed again by way of such

---

[2] According to the Rule 5 documentation, Riley was also represented by the Federal Defender Organization when he was arrested and made his initial appearance in the Northern District of New York. (ECF No. 14.)

a motion."); Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) (quoting Dirring). There is no reason to revisit the issue of denial of the right to self-representation because the issue was decided on direct appeal and there was no constitutional violation.

*Ground Five and the claim of ineffective assistance of the second appointed counsel*

Riley adamantly insists that in order to understand this claim of ineffective assistance of counsel it is paramount that one understand his theory of defense. (See Reply at 20, ECF No. 35; Motion to Vacate at 77-86, 155-56, ECF No. 1.) In order to discuss this claim under the Strickland standard I will first set forth Riley's theory of defense. To call this theory "self-defense" appears to me to be inadequate. It is much more elaborate and involves not simply self-defense, but defense of others and assorted mens rea justifications for actions that would otherwise be criminal. According to Riley, his defense was that he "acted in good faith without bad intentions, but with sincere intentions to prevent the unlawful arrest of the Browns." (Motion at 77.) Nevertheless, Riley proceeds to invoke the law of traditional self-defense and claims that he was prevented by the Court, the Government, and his incompetent defense attorney from presenting an otherwise "viable defense." (Id. at 84.) According to Riley: "An American just exercising his rights cannot be deemed doing so for bad purposes." (Id. at 84-85.) Riley claims that he had a right to do everything he did, which right arose under the Second Amendment of the United States Constitution as explained by the United States Supreme Court in District of Columbia v. Heller, 554 U.S. 570 (2008), and that his entire course of conduct was based "on his reasonable belief that he believed the government was out to murder the Browns, as the government tried to murder Riley himself on June 7th." (Id. at 90.)[3]

---

[3] The June 7 incident which figures prominently in Riley's version of events refers to an aborted attempt by the federal authorities to end the stand-off. No one was killed or seriously injured in the attempt. Ground 8 of Riley's petition, involving the failure to produce copies of weapon receipts, relates most directly to the events of June 7, 2007.

Riley, while acting in a pro se capacity, put his "defense" squarely before the Court when he filed his "Motion for Right of Defense Against Unlawful Arrest, Lawful Constructive Notice," (1:07-cr-189-GZS, ECF No. 292 (denied by order dated March 12, 2008, ECF No. 309)).  In his motion Riley explained that the "unlawful" conduct of the Marshals included but was not limited to the following:  (1) operating outside their jurisdiction;  (2) trespassing on private property, breaching the peace;  (3) violating New Hampshire law;  (4) violating Americans' rights;  (5) using excessive force/attempted murder;  (6) FAA rule violations/helicopter assault;  and (7) attempting to arrest Americans for violating laws that do not exist.  Riley's Section 2255 motion is a rehash of these points, but the "defense" essentially remains the same and the ruling that Riley was not "permitted to introduce evidence that the United States acted unlawfully based on the material included in this motion" was never changed or modified.  The evidence that Riley claims his counsel incompetently failed to investigate and/or introduce at trial is essentially the same evidence he had in mind when he formulated this "defense" in his written motion that was acted on in March 2008.

Riley must satisfy the two-prong standard of Strickland v. Washington, 466 U.S. at 687, in order to establish a claim of ineffective assistance as to Attorney Wiberg, his second court appointed attorney, who functioned as both stand-by counsel during certain periods of the case and as counsel during the trial.  According to Riley, there is no quibble about his having satisfied the deficient performance prong because Wiberg signed a four-page declaration, Exhibit R, admitting his own failure to provide effective assistance of counsel.  (Addendum to Motion to Vacate at 190, ECF 1-8;  Reply at 26.)  The only problem is Riley's *list* of exhibits submitted with his motion to vacate (ECF No. 1-7) does not include an Exhibit R, but does include Exhibit U which is identified as an unsigned declaration by Wiberg.  Careful parsing of the 73-page list

9

of exhibits does include an Exhibit R at pages 45-48.  That exhibit does have an illegible signature attached to it identified as Sven Wiberg's, and the content of the exhibit differs substantially from the unsigned Exhibit U.  The Government in its response to the motion to vacate (ECF No. 31 at 14, n.5) says that the declaration (Exhibit U) was clearly drafted by Riley and contains many self-serving statements, and that trial counsel refused to sign it.  I do not view Exhibit U as having any weight whatsoever, but agree with Riley that careful consideration should be given to Exhibit R, the declaration that does purport to be signed by Wiberg.  For purposes of this recommendation, absent evidence to the contrary, I accept it as Wiberg's declaration and view it in the light most favorable to Riley.

      Nevertheless, Riley misses the mark when he argues that Wiberg admits his own ineffective representation in the declaration.  Wiberg does say in the declaration that he was unprepared for trial, (Exhibit R ¶¶ 12, 13, 15, 16, 17), but he told the trial court he needed further time to prepare and his request to continue was denied.  While Riley catalogues a host of deficiencies in Wiberg's performance, most of them concern his failure to pursue evidence that would have been in support of his disallowed defense.  An attorney's performance is not deficient if he declines to pursue a futile tactic.  <u>Vieux v. Pepe</u>, 184 F.3d 59, 64 (1st Cir. 1999).  If one reviews the catalogue of omitted witnesses found at pages 67-68 and 89-91 of the motion to vacate it becomes apparent that Riley wanted his counsel to present a series of witnesses with hearsay knowledge who would testify that they all believed that Riley believed both he and the Browns were about to be murdered by the marshals.  If one considers what these witnesses would actually have testified about in the context of Riley's disallowed motion, it becomes apparent that Riley's counsel had no basis to pursue this disallowed defense and his failure to do so was not deficient performance on his part.

While Riley wants to recharacterize his defense theory as "self-defense" and argue that his attorney's failure to pursue that recognized defense resulted in prejudice, the fact remains that his theory of defense was and is dependent upon the assertion that the marshals were acting illegally because they intended to use excessive force in the arrest of the Browns. That avenue of defense was disallowed by the court and appointed counsel's failure to pursue a nonviable defense did not result in any prejudice to Riley.

*Ground Six and the claim of threatened witnesses*

Riley claims that two or three of his witnesses were threatened with prosecution by the United States Attorney's Office and harassed by United States Marshals. Two of the witnesses elected to assert their rights under the Fifth Amendment to the United States Constitution during the trial, after consulting with their own court assigned counsel. Riley provides declarations from these two, Keith Champagne and Terry Melton. The third potential witness, Jim Hobbs, did not provide a signed declaration and Riley relies upon a fragmentary e-mail as supporting the proposition that Hobbs was threatened by government witnesses. (See List of Exhibits, ECF No. 1-7, Exhibit I, Terry Melton Declaration, Exhibit J, Keith Champagne Declaration, Exhibit K, Jim Hobbs e-mail.) In his reply memorandum Riley does not mention the Hobbs e-mail and I consider that aspect of the claim abandoned.

The United States argues that these claims are procedurally defaulted because they were never presented to the district court or the court of appeals. Normally that analysis should end the discussion. Cf. Berthoff v. United States, 308 F.3d 124, 127-128 & n.3 (1st Cir. 2002). In his case Riley argues that he has cause to excuse the procedural default because he did not learn of the witness intimidation until after his trial and direct appeal. (Riley Declaration at 17, ¶ 53 (ECF No. 1-7 at 68).) I will assume for purposes of my analysis that Riley's later acquired

knowledge would meet the cause prong of the cause and actual prejudice he must show under United States v. Frady, 456 U.S. 152, 167 (1982), in order to resurrect a procedurally defaulted claim.

What Riley cannot show is that loss of the testimony of either Melton or Champagne created any actual prejudice. In fact the testimony of Melton and Champagne as set forth in their declarations appears to be largely inadmissible or merely cumulative of other evidence that was presented at trial. For instance, Melton's direct knowledge of the events at the Brown residence was limited to his attendance at two events, a picnic on June 23, 2007, and a BBQ/concert on July 14, 2007. His observations concerning these two events are unremarkable. He also says he videotaped a press conference involving the Browns and Randy Weaver, but his knowledge obtained from that videotaping is hearsay evidence of the subjective feelings of the Browns. It is inadmissible hearsay. Champagne attended only the July 14 event, so all of his testimony about events prior to July 14, 2007, is inadmissible hearsay. His testimony, like Melton's, concerning the events of July 14, 2007, is equally unremarkable. Both witnesses recount others' subjective feelings about government helicopters that "buzzed" the concert while conducting surveillance of the concert. None of that testimony would be relevant to any issues or defenses allowed at trial and the "loss" of these witnesses' testimony when they chose to exercise their Fifth Amendment rights did not prejudice Riley.

*Ground Seven and the claim of stolen defense evidence[4]*

In Riley's seventh ground, submitted as an amendment to the original petition ("Amendment 7," ECF No. 27), he alleges that officials at the Stafford County Jail failed to give him computer discs sent to him by outside supporters to assist with his defense. Riley alleges

---

[4] The Government did not address this ground in its responsive answer. Nevertheless, I do not conclude that the oversight means "[t]he US has conceded this claim and decided not to contest it." (Reply at 35.)

12

that between 20 and 25 discs arrived at the jail, but he received only 8 or 9 discs. This problem arose during the period when Riley was representing himself and the materials were needed by him to assist with the preparation of his defense, according to his hypothesis, but the jail refused to allow him access to the materials. Eventually Attorney Wiberg recovered 3 or 4 discs from the jail officials and gave them to Riley, but Riley contends a large number of discs went missing. As an example of how crucial these discs might have been, Riley cites the example of witness Lauren Canario who was recorded on one of the discs Riley did obtain and who testified at trial. She testified at trial that she never saw any tannerite hanging in the trees or any booby traps on the Brown's property when she went there in late August 2007. (Amendment 7 at 4.)

Riley maintains that under the standard set forth in Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988), the Government's destruction of this potentially useful-to-the-defense evidence was in bad faith. He also maintains that he has made the necessary showing that the evidence on the discs is "to some extent irreplaceable." Olzewski v. Spencer, 466 F.3d 47, 58 (1st Cir. 2006) (discussing Youngblood and California v. Trombetta, 467 U.S. 479 (1984)). I conclude that he has met neither prong of that formulation. First and foremost, assuming that there were additional discs that were never turned over to Riley as a result of bad faith conduct by the Marshals or their agents at the Stafford County Jail (a fact that is not established by Riley's conclusory allegations) there is no indication that the discs contained any information that would have been potentially useful to any *viable* defense. Nor has Riley met the irreplaceability prong of the Youngblood standard. There is no reason to believe that any of the discs from supporters of the Browns and Riley contained any information other than the type of testimony offered by Canario. Obtaining the assistance of myriad supporters at trial would certainly have been possible, as Riley himself demonstrates in his ineffective assistance grounds where he complains

13

that his court appointed attorney did not interview or subpoena the supporters, but they would have added nothing to his case except more of the same sort of information which was already available to him.

### *Ground Eight and the <u>Brady</u> claim involving weapon receipts*

Riley's claim under this ground has two components. First he claims that the failure of the United States to provide him with the weapon receipts or weapon assignment reports he sought during pretrial discovery was a violation of law because the documents would have been favorable evidence for the defense. According to Riley, without record citation,[5] the trial judge ordered the prosecution to produce these documents, but then took no action when informed the prosecution had not complied. (Second Motion to Amend Petition at 1, ECF No.17: "This issue of being deprived the weapon receipts was brought to the District Court's attention on numerous occasions, but it refused to enforce its discovery orders.")[6] Second he claims Attorney Wiberg's failure to press this issue on direct appeal was ineffective assistance of counsel that should excuse any procedural default. Riley claims the documents would have impeached the testimony of those witnesses who testified that during the June 7, 2007, incident involving Riley the weapons used against him were not lethal. Riley claims these weapon receipts would have supported his contention that the marshals used deadly force against him on that day.

Whether this claim is analyzed as a straight up claim that the United States violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and/or <u>Giglio v. United States</u>, 405 U.S. 150 (1972), or

---

[5] It appears that Riley filed three discovery motions in the underlying criminal case. (1:07-cr-00189-GZS, ECF Nos. 237, 294, 299.) The latter two motions were targeted at the weapon receipts and denied by the Court in a text order dated March 12, 2008. The first generic discovery motion was granted-in-part and denied-in-part in a text order dated February 19, 2007.

[6] Riley explains that during discovery in a related civil case he has learned that Mertes and Allen have no weapon receipts or training or certification in the use of a 37 mm launcher, which Riley asserts is the weapon they asserted they used in the "botched" June 7, 2007, assault on Riley. Riley maintains they used an M4, 5.56mm caliber assault weapon against him. His explanation of the relevance of this evidence is set forth in his Second Declaration, Exhibit S, ECF No. 26-2.

as a claim of ineffective assistance of appellate counsel for allowing the procedural default, the problem for Riley is that there is no basis for a finding of prejudice because this evidence is only relevant in terms of Riley's defense involving unlawful conduct by the United States Marshals, a defense which the Court specifically disallowed in its order of March 12, 2008, disallowing the very "defense" he claims this evidence would support.

*Cumulative Error*

Riley's final volley is that the cumulative effect of all eight claims is so great that he was denied a fair trial in violation of the United States Constitution. Certainly the cumulative effect of alleged errors by counsel should be considered by the Court when assessing actual prejudice. Turner v. United States, 699 F.3d 578, 583-584 (1st Cir. 2012). As to counsel's errors there does not appear to be any cumulative effect, any more than the cumulative effect of the other alleged errors in judicial process. Riley's entire house of cards depends upon his "defense" regarding his good faith lack of mens rea because of his belief that the officers posed a deadly threat to the Browns and were engaged in the unlawful use of deadly force against both him and the Browns. Until and unless the Court determines that Riley should have been allowed to present any evidence he wanted in support of that defense, there is absolutely no cumulative effect in all of his alleged errors.

## CONCLUSION

For the reasons stated above, I recommend that the Court deny Riley relief under 28 U.S.C. § 2255, with prejudice, and dismiss the petition. I further recommend that a certificate of appealability should not issue in the event Riley files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 28, 2013           /s/ Margaret J. Kravchuk
                           U.S. Magistrate Judge